[Cite as *Cleveland v. McCarthy*, 197 Ohio App.3d 616, 2011-Ohio-6753.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96004**

## CITY OF CLEVELAND,

APPELLEE,

v.

## McCARTHY,

APPELLANT.

## JUDGMENT:
## VACATED AND REMANDED

Criminal Appeal from the
Cleveland Municipal Housing Court
Case No. 2009 CRB 010462

**BEFORE:** Kilbane, A.J., Blackmon, J., and Jones, J.

**RELEASED AND JOURNALIZED:** December 29, 2011

**ATTORNEYS:**

Barbara Langhenry, Interim Director of Law, City of Cleveland, and Katherine S. Zvomuya, Assistant Director of Law, for appellee.

Brian R. McGraw, for appellant.

MARY EILEEN KILBANE, Administrative Judge.

{¶ 1} Defendant-appellant, Michael McCarthy, appeals his convictions for violating the housing code of plaintiff-appellee, the city of Cleveland. Finding merit to the appeal, we vacate McCarthy's convictions and remand this case for further proceedings.

{¶ 2} McCarthy and Barbara Anderson were co-owners of a house located at 3802 Bosworth Road in Cleveland, Ohio. In October 2008, the city of Cleveland Department of Building and Housing ("the board") sent McCarthy and Anderson a notice that they had violated several sections of the housing code. The violations were listed as follows: the exterior property area contains unlicensed motor vehicles (Cleveland Codified Ordinances (C.C.O.) 369.18); the exterior property area contains wrecked, dismantled, or inoperative motor vehicles (C.C.O. 369.18); the exterior masonry front steps are in need of repair and pointing (C.C.O. 369.13); the exterior step handrail is broken, deteriorated, and/or missing (C.C.O. 369.13); the exterior wall siding is loose, deteriorated, broken, and/or missing (C.C.O. 369.15); the premises shall be maintained free of any debris, material, or condition

that may create a health, accident, or fire hazard, or which is a public nuisance (C.C.O. 369.18); the garage walls and garage door are deteriorated and/or broken (C.C.O. 369.19); the exterior walls are not maintained weather resistant (C.C.O. 369.15); and the garage is in need of painting (C.C.O. 369.15).

{¶ 3} In April 2009, the city filed a complaint against Anderson for failing to rectify the violations. McCarthy's name was not listed on the complaint. In May 2009, Anderson entered a plea of no contest. Thereafter, the housing court issued numerous continuances at Anderson's request so she could remedy the violations.

{¶ 4} On April 24, 2009, which was prior to Anderson's no-contest plea, the board issued a notice of violation to McCarthy for a swale he had dug between his house and the neighbor's house and ordered him to fill in the swale.[1] McCarthy built the swale in order to prevent water from entering his property. However, the swale was too close to the neighbor's fence, which caused the fence to lean and its posts to come out of the ground. On May 28, 2009, McCarthy filed an appeal from the violation issued by the board with the City's Board of Building Standards and Building Appeals ("Building Appeals").

{¶ 5} Following a hearing, Building Appeals decided on August 19, 2009, that McCarthy could have a swale between the properties, but he was ordered to backfill the area where the swale was compromising the neighbor's fence. McCarthy also had to move the swale 12 inches from the property line. McCarthy did not appeal this order to the court of common pleas.

---

[1] A swale is a grassy depression in the ground designed to collect storm-water runoff.

**{¶ 6}** On January 12, 2010, the housing court held a hearing on the violations against Anderson. Both Anderson and McCarthy attended this hearing. At the beginning of the hearing, the court asked McCarthy to identify himself. McCarthy introduced himself and stated that he was "the one doing the work on the house." He then asked the court to be substituted as the defendant because Anderson's work schedule made it difficult for her to appear before the court. McCarthy advised the court that his name was listed on the deed. The following exchange then took place:

> COURT: Mr. McCarthy, typically how this works is if the complaint is amended then it will be amended to your name. I'll ask you if you object? If you say no then we'll proceed. Then I'll ask you for your plea, and the plea would be the same as Ms. Anderson's plea. Typically that's what happens. Otherwise, the City won't move to amend it to your name. So if you plead not guilty and want a trial then they won't move to amend it. Am I outlining that right?

> [CITY]: Yes, your Honor. I would not want to go back—we've been dealing with this case and to go back to trial—if he wants to take on the responsibility, but he does have a right to plead guilty, not guilty or no contest.

> COURT: Right he does. So how would you like to proceed? Do you want to go under that basis? McCarthy, do you have any questions?

> McCARTHY: No.

> * * *

> COURT: The City moves to amend the complaint into your name, sir. Do you object?

> McCARTHY: No.

> COURT: Without objection, how do you plead?

> McCARTHY: I'm not exactly sure, but there are issues at the property and it needs to be fixed.

COURT: You have the choice of three pleas, guilty, not guilty or no contest?

McCARTHY: No contest.

COURT: When you enter a plea of no contest, it is not an admission of guilty, but is an admission that the violations existed; and you give up your right to a jury trial; right against self-incrimination; your right for compulsory process, and your right to have the City prove your guilt. Do you understand your rights?

McCARTHY: Yes.

COURT: And do you wish to move forward without an attorney?

McCARTHY: Yes.

{¶ 7} Following this hearing, the court held numerous other hearings to obtain a status update on McCarthy's repair of the property. At these hearings, McCarthy's main focus was that he believed the swale between his property and his neighbor's property should not have to be filled in, an issue that was not relevant to the citations to which he pled no contest. The court explained that Building Appeals had held that McCarthy could keep the swale, but he had to backfill the area around the neighbor's fence posts and move the swale 12 inches away from the property line.

{¶ 8} At the April 27, 2010 hearing, McCarthy continued to argue that his trench was not causing the neighbor's fence problems. The record indicates that McCarthy had stopped making repairs to the house and the debris had again accumulated in the yard. The court ordered him to comply and backfill the swale or be imprisoned. McCarthy had until May 11, 2010, to comply. Then the court, on its own motion, continued the matter to May 18, 2010.

**{¶ 9}** At the May 18, 2010 hearing, the inspector stated that when he observed the property on May 17, 2010, the garage still needed painting, piles of debris were still in the yard, there were missing bricks on the steps, the siding had not been repaired, and no backfilling of the swale had occurred. The court found that McCarthy was not in compliance, imposed a $2,000 fine, and ordered McCarthy to serve 60 days at the Warrensville House of Corrections, 58 days of which were suspended.

**{¶ 10}** McCarthy now appeals, raising the following single assignment of error for review.

ASSIGNMENT OF ERROR ONE

McCarthy was denied due process by the Court's failure to arraign him and explain the nature of the charges and the possible penalties in violation of [Crim.R. 5 and 10]. As a result, the pre-plea procedure was fatally defective and resulted in McCarthy being ignorant of his basic rights.

**{¶ 11}** McCarthy argues that his no-contest plea was defective because the court failed to comply with Crim.R. 5 and 10. Specifically, he argues that he was not advised of (1) the nature of the charges to which he was pleading, (2) his right to have appointed counsel, (3) his right to remain silent, and (4) his right to request a jury.

**{¶ 12}** Crim.R. 5(A) governs initial appearances and preliminary hearings and requires the trial court to inform the defendant

(1) [o]f the nature of the charge against him; (2) [t]hat he has a right to counsel and the right to a reasonable continuance in the proceedings to secure counsel, and pursuant to Crim.R. 44, the right to have counsel assigned without cost to himself if he is unable to employ counsel; (3) [t]hat he need make no statement and any statement made may be used against him; (4) [o]f his right to a preliminary hearing in a felony case, when his initial appearance is not pursuant to indictment; (5) [o]f his right, where appropriate, to a jury trial.

{¶ 13} Crim.R. 10 governs arraignments and requires that when a defendant does not have counsel and is called upon to plead, the court must determine that the defendant understands his rights, including the right to counsel, the right to reasonable continuance to secure counsel, the right to appointed counsel under Crim.R. 44, and the right to remain silent.[2]

{¶ 14} "The Crim.R. 5(A) and Crim.R. 10 requirements that the accused be informed of his right to counsel applies to misdemeanor prosecutions that, as in the present case, could result in incarceration. *State v. Wellman* [(1974), 37 Ohio St.2d 162, 309 N.E.2d 915], paragraph one of the syllabus * * *. Compliance with Crim.R. 5 is mandatory, and a trial court's failure to comply with the rule 'invalidates the entire proceeding.' *State v. Boerst* (1973), 45 Ohio App.2d 240, 241, [343 N.E.2d 141]; *Cleveland v. Whipkey* (1972), 29 Ohio App.2d 79, [278 N.E.2d 374] * * *." *Middletown v. McIntosh*, Butler App. No. CA2006-07-174, 2007-Ohio-3348, ¶ 6.

{¶ 15} In the instant case, the transcript of McCarthy's initial appearance reveals that the court failed to comply with Crim.R. 5 and 10. On January 12, 2010, Anderson and McCarthy appeared before the housing court regarding the violations to which Anderson had pled no contest. McCarthy introduced himself and asked the court to be substituted as the defendant because Anderson's work schedule made it difficult for her to appear before the court. Without advising McCarthy of the charges against him, the court stated:

---

[2] Crim.R. 44(B), governing counsel in petty offenses, provides that "[w]here a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel."

COURT:   Mr. McCarthy, typically how this works is if the complaint is amended then it will be amended to your name.   I'll ask you if you object?   If you say no then we'll proceed.   Then I'll ask you for your plea, and the plea would be the same as Ms. Anderson's plea.   Typically that's what happens.   Otherwise, the City won't move to amend it to your name.   So if you plead not guilty and want a trial then they won't move to amend it. * * *

* * *

COURT:   So how would you like to proceed?   Do you want to go under that basis?   McCarthy, do you have any questions?

McCARTHY:   No.

* * *

COURT:   The City moves to amend the complaint into your name, sir.   Do you object?

McCARTHY:   No.

COURT:   Without objection, how do you plead?

McCARTHY:   I'm not exactly sure, but there are issues at the property and it needs to be fixed.

COURT:   You have the choice of three pleas, guilty, not guilty or no contest?

McCARTHY:   No contest.

COURT:   When you enter a plea of no contest, it is not an admission of guilty, but is an admission that the violations existed; and you give up your right to a jury trial; right against self-incrimination; your right for compulsory process, and your right to have the City prove your guilt.   Do you understand your rights?

McCARTHY:   Yes.

COURT:   And do you wish to move forward without an attorney?

McCARTHY:   Yes.

{¶ 16} Upon review of the record, we find that the trial court did not comply with the mandates of Crim.R. 5 and 10 at the time of McCarthy's initial appearance. Here, the court failed to advise McCarthy of (1) the numerous charges against him, (2) his right to counsel before accepting his plea, and (3) that McCarthy need make no statement and that any statement made might be used against him. The court further failed to ensure that McCarthy fully understood and was intelligently relinquishing his right to counsel.

{¶ 17} Additionally, we find that the trial court did not comply with the mandates of Crim.R. 11(E) in that before accepting McCarthy's no-contest plea, the trial court did not inform McCarthy of the effects of the guilty, not-guilty, and no-contest pleas.[3]

{¶ 18} As a result of the trial court's failure to satisfy these requirements, the entire proceeding against McCarthy is invalid. See *McIntosh,* 2007-Ohio-3348, at ¶ 14, citing *Boerst*, 45 Ohio App.2d 240, 343 N.E.2d 141. See also *State v. Thompson*, 180 Ohio App.3d 714, 2009-Ohio-185, 907 N.E.2d 329, ¶ 18.

{¶ 19} Based on the foregoing, McCarthy's sole assignment of error is sustained.

{¶ 20} Accordingly, the judgment is reversed. McCarthy's convictions are vacated, and this cause is remanded for further proceedings consistent with this opinion.

Judgment accordingly.

---

[3]Crim.R. 11(E) provides that "[i]n misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty. The counsel provisions of Crim. R. 44(B) and (C) apply to division (E) of this rule."

JONES, J., concurs.

BLACKMON, J., dissents.


PATRICIA ANN BLACKMON, Judge, dissenting.

{¶ 21} I respectfully dissent from the majority opinion. I agree that McCarthy was never arraigned or subject to a preliminary hearing during which the complaint would have been read to him. Nonetheless, immediately after accepting his plea, the court went through the list of violations with McCarthy to ascertain the status of repairs. McCarthy never argued that the violations did not exist. In fact, he was the party responsible for undertaking the repairs prior to the plea being entered. For 16 months after the plea, McCarthy engaged in conversations with the court regarding the violations and never stated that he was innocent of any of them. The only violation that McCarthy contested was the swale between the property lines; however, this was not the result of the no-contest plea, but was the result of an order from Building Appeals. Accordingly, under the unusual facts of this case, I do not believe that McCarthy was prejudiced by the court's failure to formally advise him of the violations to which he pled. I would find no reversible error and affirm.

_____